IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 6, 2025

## RICHARD TOWNSEND v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Decatur County**
**No. 23-CR-53       J. Brent Bradberry, Judge**
_____

### No. W2024-01180-CCA-R3-PC
_____

Petitioner, Richard Townsend, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in denying his claim that he received the ineffective assistance of counsel and that his plea was not knowingly and voluntarily entered. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and STEVEN W. SWORD, JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Richard Townsend.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Neil Thompson, District Attorney General; and Jennifer A. Hedge, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Mental Health Background*

On July 8, 2020, Petitioner was arrested and charged with domestic assault for attacking his father, Larry Townsend. The day after his arrest, Petitioner was admitted involuntarily to Lakeside Behavioral Health System ("Lakeside"). He was diagnosed with paranoid schizophrenia. In a memorandum dated July 21, 2020, from Lakeside to the Decatur County Sheriff's Office, the treating psychiatrist recommended that Petitioner either be "jailed long term or placed in Bolivar long term due to his extreme violence

towards others." The Lakeside records indicated that the July 2020 assault was the second incident in a one-year period where Petitioner harmed the victim resulting in the victim's hospitalization. Lakeside was "extremely concerned" that Petitioner was going to fatally harm the victim or someone else if released.

In March of 2022, Petitioner underwent a forensic evaluation at Pathways Behavioral Health Services ("Pathways"). A letter summarizing the evaluation was mailed to the General Sessions Judge on October 15, 2020.[1] Petitioner was evaluated by Richard Drewery, PhD, who concluded that Petitioner possessed "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him." Dr. Drewery also concluded that Petitioner was "able to appreciate the nature or wrongfulness" of his actions at the time of the domestic assault. Dr. Drewery recommended psychiatric treatment to include medication, individual counseling, and anger management.

On October 19, 2020, the General Sessions Court entered an agreed order for Petitioner to attend a nine-month minimum in-patient mental health treatment center. It is unclear whether Petitioner completed the treatment as ordered. The case was reset for January 25, 2021, for a status update.

On July 14, 2021, the Parsons Police Department charged Petitioner with stalking an unrelated victim. On August 13, 2021, while attempting to serve a warrant, the Decatur County Sheriff's Department charged Petitioner with resisting arrest. It is unclear from the record whether the warrant was for the stalking charge or another charge as Petitioner had also been charged with vandalism and harassment. The State filed a motion to revoke Petitioner's bond on August 13, 2021, and Petitioner was taken into custody where he remained until he entered his plea. Following a preliminary hearing on August 30, 2021, the vandalism and harassment charges were dismissed, and the remaining charges were bound over to the Decatur County Grand Jury.

On September 21, 2021, the Decatur County Grand Jury indicted Petitioner for resisting arrest (count one), stalking (count two), abuse of an elderly adult (count three), and domestic assault (count four). *See* T.C.A. §§ 39-16-602(a); 39-17-315(b)(1); 39-15-510(a); 39-13-111.

On January 14, 2022, the trial court appointed counsel ("trial counsel") who moved for a second pretrial competency evaluation which the trial court granted. On March 29,

---

[1] The State's response to the post-conviction petition indicates that the first evaluation was requested by an attorney in the Public Defender's Office on August 26, 2020. By the time the evaluation was completed, Petitioner was represented by another attorney who received a copy of the Pathways letter. Neither attorney is the subject of the post-conviction petition.

2022, Pathways recommended a comprehensive evaluation by Middle Tennessee Mental Health Institute ("MTMHI"). Petitioner was admitted to MTMHI on June 16, 2022, and on July 13, 2022, an MTMHI evaluator opined that due to "severe mental disease or defect" Petitioner did not appreciate the wrongfulness of his actions on the stalking charge. However, with regard to the charges of resisting arrest, elderly abuse, and domestic assault, Petitioner was not precluded from appreciating or understanding the wrongfulness of his actions due to severe mental disease or defect and was deemed able to "adequately assist" his attorney, participate in his defense, and understand the nature of the legal matters against him as well as the consequences that may follow.

*Plea Hearing*

On September 27, 2022, pursuant to a negotiated plea agreement, Petitioner pled guilty to elder abuse, the only felony count in the indictment. T.C.A. §§ 39-15-510(b); -501(6). The remaining three counts, all Class A misdemeanors, were dismissed. *Id.* §§ 39-16-602(a); 39-17-315(b)(1); 39-13-111. At the plea colloquy, the trial court reviewed the plea agreement with Petitioner and explained his rights as set out in the agreement. Petitioner answered that he intended to waive each of his rights and that he was not being forced, coerced, or threatened to enter the plea. He agreed that he had discussed the plea with his attorney. The trial court clarified that Petitioner would be pleading to a felony charge which would affect his right to possess a firearm and could create a criminal record which could be used to enhance punishment for any future criminal convictions. Petitioner then asked if he could "ask something" to which the trial court responded for Petitioner to ask his attorney. Petitioner then indicated that his attorney had answered his question and that he understood he would be pleading to a felony. Petitioner agreed that he was pleading guilty freely and voluntarily, that his attorney had answered all of his questions, and that he was satisfied with his attorney.

The trial court accepted the plea and pursuant to the agreement, Petitioner was sentenced to a Range I, two-year sentence with credit for time served and the remainder of the sentence to be served on supervised probation. Petitioner was also ordered to continue psychiatric treatment, maintain medication management, provide quarterly reports confirming treatment, and to have no violent contact with his parents.

On May 25, 2023, Petitioner filed a timely post-conviction petition alleging that he received ineffective assistance of counsel and that his guilty plea was not entered voluntarily and knowingly.

- 3 -

*Post-conviction hearing*

At the post-conviction hearing, an attorney who was initially retained by Petitioner's parents to represent Petitioner ("retained counsel") testified that he met Petitioner in the Decatur County Jail "[o]ne time" to discuss the charges. Retained counsel recalled that the meeting "started off fine" but during the course of the meeting, "[Petitioner's] demeanor and tone of voice changed" as he began to discuss topics unrelated to the case. Retained counsel testified that he withdrew as counsel due to his fear of Petitioner and Petitioner's inability to communicate. He did not recall when he contacted Petitioner's parents to withdraw; however, he returned the retainer check which was admitted into evidence and showed a payment date of September 24, 2021.

Trial counsel testified that he had twenty-five years of experience and a practice devoted to criminal defense and juvenile cases in the last ten years. He was appointed to represent Petitioner both in general sessions court and in circuit court. Trial counsel confirmed that Petitioner was in custody "quite some time." He met with Petitioner in jail and in court while the case was in general sessions court and specifically recalled meeting Petitioner "five or six times" when the case was in circuit court. He also met with Petitioner's family "every time we came to court" and had several phone conversations with them.

Trial counsel filed a motion for discovery and a motion for a forensic evaluation after the case was bound over to circuit court. Although he had no issues communicating with Petitioner, trial counsel moved for a forensic evaluation because he was aware of Petitioner's history of mental health issues. Trial counsel added that it is his general practice to examine a client's mental health history in determining defense strategy.

The July 13, 2022 MTMHI report from Petitioner's evaluation was admitted during trial counsel's testimony without objection and trial counsel read portions of the report into the record. Trial counsel noted the evaluator's conclusion that Petitioner was competent to stand trial and that Petitioner's mental condition at the time of the offenses did not rise to the level required for an insanity defense except for the stalking charge. Additionally, Petitioner did not meet the standards for judicial commitment and no forensic follow-up evaluation was recommended. A list of discharge medications was provided to the Decatur County Jail. Despite the unusual findings regarding the stalking charge, trial counsel found it unnecessary to petition for another evaluation. He agreed with the assessment that Petitioner was competent to stand trial and had no doubt that Petitioner understood the case. Trial counsel acknowledged that like retained counsel, he too was "scared . . . a little bit" by Petitioner and found his behavior "somewhat" erratic. Trial counsel observed however, that Petitioner was "better" when he was taking his medications and described

him as "very intelligent." From his conversations with jail personnel, trial counsel learned that Petitioner sometimes chose not to take his prescribed medications.

According to trial counsel, the MTMHI report directed his defense strategy. Because an insanity defense could not be pursued, trial counsel and Petitioner discussed whether to go to trial or negotiate a plea. The State made only one offer: that Petitioner plead guilty to elder abuse, be sentenced to two years with credit for time served, and the balance suspended to probation, and the remaining charges would be dismissed. Trial counsel conveyed the State's offer to Petitioner and "thoroughly" reviewed it with him. Petitioner asked questions about the offer and was "thrilled to death" with the plea offer and was "happy" that he would be released from jail the day he pled. Petitioner's parents "were pleased as well." Trial counsel did not ask Petitioner whether he had taken his medication on the day of the plea hearing; he "assume[d] the judge would have asked him that" prior to entering the plea.

Captain Donald Gregory, the Decatur County Sheriff's Office jail administrator, supervised Petitioner while Petitioner was incarcerated. Captain Gregory could not recall the exact dates of Petitioner's incarceration but testified that Petitioner was incarcerated before he was transported to the hospital for the forensic examination and that he returned to the jail after his forensic examination was completed.

Captain Gregory described Petitioner as "manic" from the time Petitioner first entered the jail until his forensic examination. Captain Gregory was aware that Petitioner received medication after his evaluation and recalled that the medication had the effect of bringing Petitioner "down to earth, more normal[.]" Captain Gregory was also aware that Petitioner had counsel. He specifically recalled that retained counsel's representation of Petitioner "didn't last long."

Captain Gregory recalled retained counsel visiting Petitioner in jail, but did not recall trial counsel visiting Petitioner. Over the State's objection, Captain Gregory testified that he had previously spoken to judges in general sessions court and circuit court about his concerns that trial counsel's lack of visitation of clients could be an issue. However, he was unable to determine from the jail visitor log whether trial counsel visited Petitioner in the jail because there is no method to quickly reference or search whether someone has visited the jail and the log-in record is "not so great[.]"

On cross-examination, Captain Gregory clarified that although he did not personally recall whether trial counsel called Petitioner, he confirmed that he does not field all incoming jail calls and is not tasked with escorting inmates to the visiting room to meet with their attorneys. Captain Gregory acknowledged that the COVID-19 pandemic significantly altered how the courts and the jails handled in-person visitation of inmates.

Wanda Townsend, the victim's wife and Petitioner's mother, confirmed that retained counsel withdrew and returned the retainer. Ms. Townsend attended every court hearing. At the plea hearing, she remembered that Petitioner appeared "puzzled" when the trial judge asked him a question and trial counsel had to answer for Petitioner. Prior to the plea hearing, Ms. Townsend talked to trial counsel on the phone a couple of times and sent him text messages inquiring about the status of Petitioner's case. She testified that trial counsel did not respond to her text messages or interview her about the facts of the case. She acknowledged however, that she did not witness the assault. She was not informed about Petitioner's sentence and the terms of the plea agreement. She vaguely recalled trial counsel discussing the possibility of a conservatorship for Petitioner.

Ms. Townsend talked to Petitioner while he was in custody and was concerned about his mental health based on their conversations. She explained that Petitioner said he was in the military, but she knew he had never served. She testified that Petitioner was diagnosed with seasonal affective disorder and bipolar disorder in 2010.

The victim testified that he was involved in the altercation with Petitioner which occurred in summer 2020. Petitioner was not on medication at the time of the altercation and had just returned from California. The victim spoke "very little" with trial counsel about the facts of the case. He understood that trial counsel was appointed. Like his wife, he vaguely recalled trial counsel mention something about "a conservatorship." Although he did not understand all the terms of the plea agreement, he was "excited that [Petitioner] was getting out of jail" by entering a plea. He recalled signing the plea petition as the victim.

Petitioner testified that he served one year and five months in jail prior to pleading guilty to elder abuse. At the time of the post-conviction hearing, Petitioner lived in Parsons, Tennessee, was unemployed, and received disability income which he began receiving in 2013. Petitioner had been diagnosed with seasonal affective disorder. He testified that after he was released from jail, he was prescribed Abilify, a once-a-month injection; Lamotrigine, a mood stabilizer; and Prozac for anxiety and depression. At the time of the plea, Petitioner was taking Haldol which he said undermined his ability to comprehend and focus and reduced his ability to process information efficiently. Consequently, Petitioner testified that he did not understand the plea agreement or the plea proceeding.

Petitioner testified that he read the plea petition as instructed by trial counsel and identified his signature. He stated that he did not read it very carefully but admitted to assaulting the victim: "I didn't read over it that much, but the incident with my father, I was there, and that happened. I did apparently assault my father." Petitioner confirmed that the trial judge informed him of his rights and went over the terms of the plea agreement. During his testimony, Petitioner reviewed portions of the plea hearing transcript and read

his responses to the trial court's questions into the record. He answered in the affirmative that he understood that he was under oath, that he was therefore required to testify truthfully, and that to do otherwise would result in a charge of perjury. Petitioner also read where he denied that he was under the influence of alcohol or drugs and that he was pleading guilty freely and voluntarily, that trial counsel answered all of his questions, and that he was satisfied with trial counsel. Although he testified at the plea hearing that he had the opportunity to discuss the plea agreement with trial counsel, Petitioner maintained that their discussion lasted no more than "two minutes."

Petitioner maintained that he was confused about the plea agreement despite testifying to the contrary at the plea hearing. He maintained that he had difficulty understanding the plea petition because he was on Haldol. He denied that trial counsel went over the plea agreement with him. He testified that trial counsel advised him on what answers to give when questioned by the trial judge during the plea colloquy. Petitioner confirmed that he "want[ed] to be done" with the case but denied that he knew he was pleading to a felony. He maintained that he first learned that elder abuse was a felony when informed by the trial court.

Petitioner testified that following his release, he was taken off Haldol and prescribed Abilify. He stated that he slowly gained understanding and "insight" about what had occurred and learned what he had "lost" from pleading guilty to a felony. He specified that the "loss" included "the ability to work . . . in the mental health field" and to own a firearm. He testified that trial counsel informed him that he would be pleading guilty to "a Class E felony" and nothing more. Petitioner asked about firearms because he wanted to go hunting with his son. He stated however, that he did not "care" whether he could own a firearm or vote. He was more concerned about how his conviction affected his employability.

Petitioner acknowledged that he did not inform trial counsel that he was confused or that he did not want to enter a plea. He testified that when he asked trial counsel if he would be able to hunt with his son, trial counsel reiterated that Petitioner was pleading guilty to a Class E felony and that Petitioner was "getting out either way[.]" Petitioner insisted that trial counsel should have recognized Petitioner's confusion when he asked whether he would be able to hunt with his son: "I thought that [trial counsel] would know when I asked him if I could hunt with my son if he realized – did he not – didn't realize that I had some confusion about the issue, but he was done."

The State then recalled trial counsel who identified the invoice he submitted for payment of his representation of Petitioner. The invoice showed that in 2022, trial counsel met with Petitioner on January 25, February 22, April 19, July 19, and September 27. Trial counsel agreed that the meeting dates probably corresponded to court appearance dates. Trial counsel denied that his conversation with Petitioner prior to entry of the plea lasted

one to two minutes. He maintained that he visited Petitioner while Petitioner was incarcerated. He also testified that the "majority" of times he went to jail to visit a client, he did not see the jail administrator and there was no sign-in sheet at the jail to document his visits.

In its written order denying post-conviction relief, the post-conviction court accredited the testimonies of retained counsel and trial counsel. The post-conviction court found the testimonies of Petitioner's mother and the victim irrelevant to the petition. The post-conviction court found that Petitioner failed to prove that he received ineffective assistance of counsel because he did not prove that trial counsel's performance prejudiced him. The post-conviction court acknowledged Petitioner's "battled with mental health issues" but noted that on the day of the plea, Petitioner was coherent and respectful, denied being under the influence of any alcohol or drugs, and acknowledged satisfaction with the consequences of being a convicted felon. Thus, the post-conviction court found that Petitioner's claim that his plea was not knowingly and voluntarily entered was not supported by the transcript of the guilty plea proceedings or the proof at the evidentiary hearing. It is from this judgment that Petitioner now appeals.

**Analysis**

On appeal, Petitioner claims that trial counsel's performance was deficient because trial counsel "allowed" him to enter a plea despite being aware of Petitioner's mental state without medication and because trial counsel failed to explain or review the plea agreement and discovery before Petitioner entered the plea. Petitioner also claims that his plea was not voluntarily and knowingly entered because he did not fully comprehend the plea due to his mental state at the time of the plea and that he had only "a very brief" opportunity to discuss his case with trial counsel before entering his plea. The State argues that the post-conviction court properly denied relief on the claim of ineffective assistance of counsel and an involuntary and unknowing guilty plea. We agree with the State.

Under the Post-Conviction Procedure Act, a criminal defendant may seek relief from a conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. Because the right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee, the denial of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this Court reviews de novo." *Phillips v. State*, 647 S.W.3d 389, 400

(Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)). As an appellate court, we are bound by the factual findings of the post-conviction court unless the evidence in the record preponderates against those findings. *Howard*, 604 S.W.3d at 57 (citing Tenn. R. App. P. 13(d)); *see also Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014); *Fields v. State*, 40 S.W.3d 450, 456 n.4 (Tenn. 2001). The same does not hold true for the post-conviction court's conclusions of law which are reviewed de novo with no presumption of correctness. *Howard*, 604 S.W.3d at 57; *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020).

## I. Ineffective Assistance of Counsel – Guilty Plea

When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993); *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick*, 454 S.W.3d at 457 (quoting *Strickland*, 466 U.S. at 688); *see also Baxter v. Rose*, 523 S.W.2d 930, 932-33 (Tenn. 1975). Under *Strickland*, this court starts with "the strong presumption" that counsel exercised reasonable judgment in all significant decisions. *Kendrick*, 454 S.W.3d at 458 (citing *Strickland*, 466 U.S. at 689).

The prejudice prong of the test is satisfied by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To demonstrate prejudice in the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial. *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697; *Nesbit v. State*, 452 S.W.3d 779, 786-87 (Tenn. 2014). Accordingly, if either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). "[T]he petitioner is required to prove the fact of counsel's alleged error by clear and convincing evidence." *Phillips*, 647 S.W.3d at 401 (quoting *Dellinger*, 279 S.W.3d at 294); *see also* T.C.A. § 40-30-110(f); Tenn. Sup. Ct. 28, § 8(D)(1).

In denying Petitioner relief on the claim that his plea was involuntary and unknowing due to the ineffective assistance of trial counsel, the post-conviction court accredited trial counsel's "honest[] and competent[]" testimony regarding his actions in

investigating the case and preparing Petitioner for the plea hearing. Trial counsel testified that he met Petitioner "at least five or six times" to discuss the case and review discovery. Trial counsel also testified that he and Petitioner engaged in extensive conversations regarding the plea offer.

The post-conviction court found no deficiency in Petitioner's allegation that trial counsel failed to meet him in jail to discuss the case and to review discovery in order to defend and advise Petitioner. Specifically, the post-conviction court found that ten days after being appointed, trial counsel petitioned the trial court for an evaluation to determine Petitioner's competency, a petition that would not have occurred had trial counsel not met with Petitioner sufficiently to recognize that an evaluation was necessary in representing Petitioner.

The evidence does not preponderate against the post-conviction court's findings. Because trial counsel was concerned about Petitioner's mental competency, he requested another forensic evaluation even though Petitioner had already been evaluated and found competent. Based on the findings of the MTMHI evaluation which were consistent with the findings of the Pathways evaluation that Petitioner was competent to stand trial *and* that insanity could not be raised as a defense to three of the four charges including the elder abuse charge to which Petitioner pled guilty, trial counsel negotiated an offer which resulted in a dismissal of three of the four charges and Petitioner's immediate release upon entry of the guilty plea. Trial counsel's accredited testimony also includes proof that he perceived no mental or medical issues to bar Petitioner from moving forward with the plea. Indeed, Petitioner and his parents were pleased with the outcome of the case. Trial counsel's investigation of the case and preparation of Petitioner for the plea was reasonable. Petitioner was properly denied relief.

Although this court is not obligated to review Petitioner's claim of prejudice, we agree with the post-conviction court's conclusion of no prejudice. *See Finch*, 226 S.W.3d at 316. The post-conviction court noted the following details in rejecting Petitioner's claim of prejudice:

> [Petitioner] claimed that he did not understand the plea but did not elaborate on what parts that he did not understand. He claimed to be overwhelmed when entering his guilty plea. Of importance, [Petitioner] testified that he did, in fact, assault his father. His primary complaint is that he did not understand the consequences of becoming a convicted felon and, therefore, he is now prejudiced by being a felon.
>
> . . . [Petitioner] does not claim that he would have insisted on going to trial. To the contrary, he admitted during the evidentiary hearing that he assaulted

his father. Because a petitioner must establish both deficiency and prejudice under *Strickland*, a failure to prove either provides a sufficient basis to deny relief on the ineffective assistance claim. [Petitioner] did not prove to the [c]ourt that [trial counsel]'s performance prejudiced [Petitioner]. His claim for ineffective assistance of counsel fails.

(internal citation omitted). The evidence does not preponderate against the post-conviction court's factual findings.

The facts Petitioner alleged, even if true, do not entitle him to relief. At the post-conviction hearing, Petitioner testified that he was prejudiced by the impact of a felony conviction on his employment prospects. However, Petitioner never asserted that he would have gone to trial had trial counsel advised him that a felony would impact his future employability. Petitioner has failed to prove prejudice and is not entitled to relief.

## II. Involuntary Guilty Plea

Petitioner claims that his plea was not voluntarily and knowingly entered because he lacked mental comprehension to appreciate and understand the consequences of entering a guilty plea to a felony. The State contends Petitioner entered a knowing and voluntary plea. We agree with the State.

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because due process has been denied. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). Courts should consider the following factors when determining the validity of a guilty plea:

1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006).

Petitioner argues that in light of the *Howell* factors, his plea was not a voluntary and intelligent choice because he was "confused" due to mental illness, and he received "little to no advice" from trial counsel and had only a "very brief opportunity" to confer with trial

counsel about the plea. Petitioner's claim attacking his guilty plea is based largely on the allegations of ineffective assistance of counsel as addressed above. Having determined that his ineffective assistance of counsel claim is without merit, we likewise reject Petitioner's challenge to the voluntariness of his guilty plea on the same grounds.

Here, the post-conviction court found Petitioner's post-conviction testimony lacked credibility. The post-conviction court instead credited Petitioner's testimony during the plea hearing. At the guilty plea hearing, Petitioner answered that he understood his rights and the proceedings. After Petitioner was given the opportunity to confer with trial counsel about elder abuse being a Class E felony, Petitioner testified under oath that he wanted to go forward and confirmed that his plea was knowingly and voluntarily entered.

The record shows that the same judge presided over the plea hearing and the post-conviction hearing and was undoubtedly in the best position to determine whether Petitioner knowingly, voluntarily, and intelligently entered his guilty plea. In addition, "[a] petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Contrary to Petitioner's assertion, the record supports the post-conviction court's conclusion that Petitioner knowingly, voluntarily, and intelligently pled guilty to a Class E felony. First, despite Petitioner's "somewhat" erratic behavior, trial counsel described Petitioner as "very intelligent." The post-conviction court noted that Petitioner was a college graduate. Second, Petitioner was represented by experienced and competent counsel who quickly petitioned for a forensic evaluation and requested discovery upon his appointment as Petitioner's counsel. Third, trial counsel's accredited testimony provides proof that trial counsel and Petitioner discussed the case and the plea offer. Petitioner had legitimate reasons not to go to trial. He admitted he assaulted the victim and had no defense to the crime.

We find that this is a classic case of "buyer's remorse." Petitioner is no longer satisfied with the plea which he initially desired. We have held that "[a] plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances." *Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons, the judgment of the post-conviction court is affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE
